20-cv-07820 (CM) (OTW)

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔠𝔬𝔲𝔯𝔱

## 𝔖𝔬𝔲𝔱𝔥𝔢𝔯𝔫 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔑𝔢𝔴 𝔜𝔬𝔯𝔨

PHILLIP CARR,

*Petitioner,*

*v.*

MICHAEL KIRKPATRICK, SUPERINTENDENT,
CLINTON CORRECTIONAL FACILITY,

*Respondent.*

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PETITION FOR A WRIT OF HABEAS CORPUS

Robert S. Dean (RD-0772)
Center for Appellate Litigation
*Attorney for Petitioner*
120 Wall Street, 28th Floor
New York, NY 10005
212-577-2523

Matthew Bova (5073135)
mbova@cfal.org
*Of Counsel*

May 7, 2021

# TABLE OF CONTENTS

REPLY POINT I

The State's procedural argument fails. ..........................................................................1

    A.   Overview ...................................................................................................1

    B.   It is at best ambiguous whether the Appellate Division actually found Petitioner's discrete redaction claim, and not his other ineffectiveness claims, had to be raised in a post-judgment motion. ....................................4

    C.   To the extent the Appellate Division actually applied the bar here, that bar was interwoven with *Strickland* analysis and is thus not an independent state bar. ..................................................................................6

    D.   In any event, requiring a post-judgment motion would constitute an exorbitant application of state procedural law, thus barring the State's procedural argument. .....................................................................................7

    E.   Alternatively, the remedy here is a stay to permit exhaustion. .................10

REPLY POINT II

The State's prejudice analysis suffers from serious legal and factual problems.......12

    A.   The gunshot-residue testing confirms innocence. .......................................12

    B.   The prosecution's evidence, which rested on cooperators, was underwhelming. ..........................................................................................13

    C.   The State's reliance on anonymous "minivan" hearsay fails. .....................15

    D.   The State cannot rely on purported "evidence" that the jury never heard. .............................................................................................................17

CONCLUSION .............................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Ake v. Oklahoma*, 470 U.S. 68 (1985) ..........................................................................6

*Bradley v. Meachum,* 918 F.2d 338 (2d Cir. 1990). .....................................................6

*Brown v. Miller*, 451 F.3d 54 (2d Cir. 2006) ..........................................................6, 7

*Castellanos v. Kirkpatrick*, 2013 WL 3777126 (E.D.N.Y. July 16, 2013)...................11

*Clark v. Perez*, 510 F.3d 382 (2d Cir. 2008).................................................................8, 9

*Coleman v. Thompson*, 501 U.S. 722, 735 (1991).......................................................5, 6, 7

*Cotto v. Herbert*, 331 F.3d 217 (2d Cir. 2003).........................................................7, 8, 9

*Cruz v. Griffin*, 2019 WL 6220806 (S.D.N.Y. Oct. 24, 2019) .........................................2

*Davis v. Wechsler,* 263 U.S. 22 (1923).............................................................................8

*DeBerry v. Portuondo*, 403 F.3d 57 (2d Cir. 2005) ........................................................5

*Doe v. Jones*, 762 F.3d 1174 (10th Cir. 2014) ...............................................................11

*Dolis v. Chambers*, 454 F.3d 721 (7th Cir. 2006) ..........................................................11

*Eze v. Senkowski*, 321 F.3d 110 (2d Cir. 2003)..............................................................14

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F.Supp.2d 369
   (S.D.N.Y.2002)..............................................................................................................3

*Fulton v. Graham*, 802 F.3d 257 (2d Cir. 2015) .......................................................7, 10

*Glenn v. Bartlett*, 98 F.3d 721 (2d Cir.1996) ..................................................................5

*Green v. Keyser*, 2017 WL 5125533 (S.D.N.Y. Nov. 1, 2017) .......................................2

*Hayes v. Coombe*, 142 F.3d 517 (2d Cir. 1998) ...........................................................5, 6

*Heleva v. Brooks*, 581 F.3d 187 (3d Cir. 2009) .............................................................11

*Henry v. Lee*, 2013 WL 1909415 (E.D.N.Y. May 8, 2013) ...........................................11

*Hinton v. Alabama*, 571 U.S. 263 (2014) (per curiam) .................................................7

*In re UBS AG Sec. Litig.*, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ......................3

*Lee v. Kemma*, 534 U.S. 362 (2002)...............................................................7, 8, 9, 10

*Mena v. Long*, 813 F.3d 907 (9th Cir. 2016) .................................................................11

*Messiah v. Duncan*, 435 F.3d 186 (2d Cir. 2006) .......................................................4, 6

*O'Kane v. Kirkpatrick*, 2011 WL 3809945 (S.D.N.Y. Feb. 15, 2011) ...........................2

*Osborne v. Ohio*, 495 U.S. 103 (1990) ............................................................................8

*People v. Acevedo*, 44 A.D.3d 168 (1st Dept 2007)........................................................3

*People v. Brown*, 45 N.Y.2d 852 (1978).......................................................................3, 9

*People v. Clermont*, 22 N.Y.3d 931 (2013) ....................................................................2

*People v. Cuadrado*, 9 N.Y.3d 362 (2007) .....................................................................2

*People v. Denny*, 95 N.Y.2d 921 (2000) ..........................................................................2

*People v. Gomez*, 52 A.D.3d 395 (1st Dept. 2008).........................................................3

*People v. Gonzalez*, 156 A.D.3d 510 (1st Dept. 2017)....................................................3

ii

*People v. Love*, 57 N.Y.2d 998 (1982) ............................................................................2

*People v. Medina-Gonzalez,* 116 A.D.3d 519 (1st Dept. 2014); ...................................3

*People v. Pabon*, 167 A.D.3d 460 (1st Dept. 2018) ...................................................3, 7

*People v. Rivera*, 71 N.Y.2d 705 (1988) ................................................................2, 5, 7

*People v. Sanabria*, 151 A.D.3d 401 (1st Dept. 2017) .................................................3

*People v. Sargsyan*, 71 A.D.3d 401 (1st Dept. 2010) ....................................................3

*People v. Shutsha*, 151 A.D.3d 657 (1st Dept. 2017) .................................................3, 7

*People v. Turner*, 5 N.Y.3d 476 (2005) ....................................................................2, 7

*People v. Wilson*, 164 A.D.3d 1012 (3d Dept. 2018) ....................................................3

*Pierotti v. Walsh*, 834 F.3d 171 (2d Cir. 2016) ............................................................7

*Rhines v. Weber*, 544 U.S. 269 (2005) ...................................................................10, 12

*Rivera v. Kaplan*, 2017 WL 3017713  (S.D.N.Y. July 13, 2017) ...........................10, 12

*Whitley v. Ercole*, 509 F. Supp.2d 410 (S.D.N.Y. 2007) .............................................11

*Wiggins v. Smith*, 539 U.S. 510 (2003) ........................................................................7

**Other Authorities**

Brian R. Means, FEDERAL HABEAS MANUAL ...................................................................6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILLIP CARR,

                    *Petitioner*,

          v.

                                                    20-cv-07820 (CM) (OTW)

MICHAEL KIRKPATRICK,
Superintendent, Clinton Correctional Facility,


                    *Respondent*.

## REPLY MEMORANDUM OF LAW

Petitioner, Phillip Carr, submits this reply memorandum of law in response to the State's memorandum of law in opposition to his habeas petition ("STATE MEM.").

## REPLY POINT I

### The State's procedural argument fails.

**A. Overview**

The State takes a rather drastic procedural position. The State does not deny that counsel's reckless failure to redact the cooperators' plea transcripts was deficient performance. STATE MEM. 14-27 (solely addressing prejudice and not contesting deficient performance). Nevertheless, the State reads the Appellate Division decision as holding that, under state procedural law, Petitioner had to raise this claim in a post-conviction motion under C.P.L. § 440.10. STATE MEM. 10-13. The State claims this procedural rule bars federal habeas review. *Id.*

In advancing this procedural claim, the State does not deny, because it cannot deny, that under long- and well-established New York law, an ineffective-assistance

claim *must* be raised on direct appeal when the record establishes there was no

reasonable strategic rationale for counsel's blunder.[1] Nor does the State try to claim

---

[1] See, for example, the following citations, which confirm this long- and well-established rule of state law:

- *Cruz v. Griffin*, 2019 WL 6220806, *8 (S.D.N.Y. Oct. 24, 2019) ("Petitioners must raise record-based claims by direct appeal rather than by a collateral motion in state court."), *R&R adopted* 2019 WL6211262 (S.D.N.Y. Nov. 20, 2019);

- *O'Kane v. Kirkpatrick*, 2011 WL 3809945, *7 (S.D.N.Y. Feb. 15, 2011) ("[A]ll claims that are record–based must be raised in a direct appeal. . . . It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by bringing a claim under CPL § 440.10."), *R&R adopted*, 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011).

- *Green v. Keyser*, 2017 WL 5125533, *9-10 (S.D.N.Y. Nov. 1, 2017) ("When a claim for ineffective assistance requires the court to analyze matters outside of the record, New York courts have found that defendants must pursue their claim [through a Section 440.10 motion]. . . . If a defendant fails to file a § 440.10 motion, federal courts find the claim unexhausted for the purpose of habeas review.") (citing *Otero v. Stinson*, 51 F.Supp.2d 415, 419 (S.D.N.Y. 1999));

- *People v. Clermont*, 22 N.Y.3d 931, 933 (2013) (ineffectiveness claim reviewable on direct appeal because "this is not a case where any of these errors can be explained as part of a strategic design (assuming one could be imagined)");

- *People v. Cuadrado*, 9 N.Y.3d 362, 364-65 (2007) (record-based claims must be raised on direct appeal);

- *People v. Turner*, 5 N.Y.3d 476, 483-85 (2005) (as direct-appellate record confirmed no reasonable strategy for trial counsel's blunder, appellate counsel was ineffective for failing to raise an ineffectiveness claim on direct appeal; "appellate counsel's failure to argue that trial counsel had been ineffective in failing to assert a statute of limitations defense to the manslaughter charge fell short of an objective standard of reasonableness");

- *People v. Denny*, 95 N.Y.2d 921, 923 (2000) ("Without the benefit of additional facts that might have been developed after an appropriate postconviction motion, we cannot conclude that counsel's actions lacked any strategic or other legitimate explanation.");

- *People v. Rivera*, 71 N.Y.2d 705, 709 (1988) (ineffectiveness claim reviewable on direct appeal where "the trial record alone" allows a court to "reject all legitimate explanations for counsel's failure");

- *People v. Love*, 57 N.Y.2d 998, 999-1000 (1982) (direct-appellate review not permitted because "we cannot conclude that defendant's counsel was ineffective simply by reviewing the trial record without the benefit of additional background facts")

that counsel's egregious blunder here could possibly have been the result of a
reasonable strategic rationale. Indeed, the State does not dispute deficient
performance,[2] which comes as no surprise since the unexpanded record conclusively
proves that counsel's reckless failure to redact the judge's damning declarations of

---

- *People v. Brown*, 45 N.Y.2d 852, 853 (1978) (direct-appellate review required because
"[t]he record, unlike as in most 'ineffective counsel' cases, demonstrates beyond cavil that
defendant was lacking effective counsel");

- *People v. Wilson*, 164 A.D.3d 1012, 1020 (3d Dept. 2018) (finding counsel ineffective
on direct appeal because "we can discern no reasonable trial strategy or legitimate
explanation for defense counsel's failure to request a *Frye* hearing");

- *People v. Pabon*, 167 A.D.3d 460, 460 (1st Dept. 2018) ("Defendant's ineffective
assistance of counsel claims are unreviewable on direct appeal because they involve matters
of strategy not reflected in, or fully explained by, the record.");

- *People v. Sanabria*, 151 A.D.3d 401, 405-06 (1st Dept. 2017) ("Without an expanded
record, which requires a 440.10 motion, we cannot say there was no objective reasonable
strategy in probing the jurors about their personal beliefs on this issue.");

- *People v. Gonzalez*, 156 A.D.3d 510, 511 (1st Dept. 2017) (direct-appellate review
unavailable because the "present record fails to establish the absence of legitimate strategic
reasons for not seeking to reopen a suppression hearing");

- *People v. Shutsha*, 151 A.D.3d 657, 658 (1st Dept. 2017) (direct-appellate review
available because the "unexpanded record" confirmed "no reasonable strategic basis" for
counsel's blunder);

- *People v. Kindell*, 135 A.D.3d 423, 423-425 (1st Dept. 2016) (unexpanded record
permitted appellate review because the record indicated that "defense counsel did not have
any reasonable strategy for failing to move to reopen the suppression hearing");

- *People v. Medina-Gonzalez,* 116 A.D.3d 519, 521 (1st Dept. 2014);

- *People v. Sargsyan*, 71 A.D.3d 401, 401 (1st Dept. 2010);

- *People v. Gomez*, 52 A.D.3d 395, 395 (1st Dept. 2008); and

- *People v. Acevedo*, 44 A.D.3d 168, 172 (1st Dept 2007) ("While the People assert that
such claim is unreviewable except where raised by a CPL 440.10 motion, it is well-settled
that an ineffective assistance of counsel claim may be raised also on direct appeal").

[2] *Compare* PET. MEM. 28-29, *with* STATE MEM. 14-27; *see e.g.*, *In re UBS AG Sec. Litig.*,
2012 WL 4471265, *11 (S.D.N.Y. Sept. 28, 2012) (uncontested point was "concede[d] through
silence"); *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F.Supp.2d 369, 392-93 &
n. 116 (S.D.N.Y.2002) (same).

guilt and violence stemmed from "oversight, carelessness, ineptitude, or laziness." *Cornell v. Kirkpatrick*, 665 F.3d 369, 377 (2d Cir. 2011) (quoting *Wilson v. Mazucca*, 570 F.3d 490, 502 (2d Cir. 2009)). Nevertheless, the State claims Petitioner had to file a wasteful post-conviction motion under C.P.L. § 440.10 to prove that uncontested and uncontestable fact. STATE MEM. 10-13.

This Court should reject the State's procedural formalism on three grounds:

- the Appellate Division's decision cannot be reasonably interpreted as adopting this baseless procedural theory and, at best, is ambiguous on this score;

- assuming the Appellate Division adopted this procedural claim, that determination would not be an independent state ground because it's interwoven with federal-constitutional analysis— that is, whether this record conclusively confirms there was no reasonable strategic rationale for counsel's blunder; and

- such a procedural holding would be an "exorbitant" application of state procedural law.

**B. It is at best ambiguous whether the Appellate Division actually found Petitioner's discrete redaction claim, and not his other ineffectiveness claims, had to be raised in a post-judgment motion.**

It is at best ambiguous whether the Appellate Division applied this procedural rule to this redaction-ineffectiveness claim. *E.g.*, *Messiah v. Duncan*, 435 F.3d 186, 195 (2d Cir. 2006) ("The preclusion of federal review applies only when 'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'") (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d

Cir.1996)).[3] The decision first addressed the merits of the unpreserved redaction claim, finding that "as the [State] concede[s], remarks by the plea court that could be viewed as expressing an opinion on this defendant's guilt and the dangers of testifying against him should have been redacted. Nevertheless, the error was harmless." A2. Then, when separately addressing the ineffectiveness "claims"—which included the claim that counsel was ineffective for failing to (1) object to hearsay/prosecutorial misconduct, (2) clarify a jury note, and (3) make any sentencing argument—the court found them "unreviewable on direct appeal because they involve matters not reflected in, or fully explained by, the record." A4.[4] The decision did not specify that it was finding the redaction-ineffectiveness claim unreviewable. A4.

It is highly likely that this "unreviewable" finding did not apply to the redaction-ineffectiveness claim for three reasons:

- the State never specifically argued before that a post-judgment motion was necessary to determine whether this particular error was the result of a reasonable strategic determination;

- the suggestion that this claim must be raised in a post-conviction motion is baseless because, as the State essentially concedes, this record conclusively proves no reasonable strategy was at work here (*see* fn. 1, *above*);

---

[3] *DeBerry v. Portuondo*, 403 F.3d 57, 64 (2d Cir. 2005) (invocation of procedural bar must be "clear from the face of the opinion") (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 (1991)); *Coleman*, 501 U.S. at 735 ("In habeas, if the decision of the last state court to which the petitioner presented his federal claims . . . did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition."); *Hayes v. Coombe*, 142 F.3d 517, 518 (2d Cir. 1998) ("such an independent ground must be relied upon clearly and unambiguously in the state court's opinion.").

[4] Citing *Rivera*, 71 N.Y.2d at 709 (when the record does not confirm the absence of a reasonable strategic justification for counsel's omission, a post-judgment motion is required), and *Love*, 57 N.Y.2d 998 (same)); *see* CARR APP. DIV. BRIEF: A1064-73.

- when the Appellate Division discussed ineffectiveness, it had already addressed the redaction error on the merits, thus it had no need to specifically address the procedural bar's application to that claim.[5]

At best, the Appellate Division decision did not "clearly and unambiguously" declare—with language "clear from the face of the opinion"—that the redaction-ineffectiveness claim had to be raised in a post-judgment motion. *Messiah,* 435 F.3d at 195; *Hayes*, 142 F.3d at 518. Given this ambiguity, this Court should review this claim on the merits.

## C. To the extent the Appellate Division actually applied the bar here, that bar was interwoven with *Strickland* analysis and thus not an independent state bar.

If the Appellate Division decision actually found that this redaction-ineffectiveness claim had to raised in a post-conviction motion, that finding is "interwoven" with federal law and thus does not constitute an independent state procedural bar to review. *E.g.*, *Brown v. Miller*, 451 F.3d 54, 56-57 (2d Cir. 2006) (citing *Coleman*, 501 U.S. at 735); *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985) (because the State had "made application of the procedural bar depend on an antecedent ruling on federal law, that is, on the determination of whether federal constitutional error has been committed," the rule was not independent from federal law); *Bradley v. Meachum,* 918 F.2d 338, 343 (2d Cir. 1990).

---

[5] *See e.g.*, Brian R. Means, FEDERAL HABEAS MANUAL § 9B:19 (available on Westlaw) ("[A]mbiguities may arise if the state court imposes multiple procedural bars to multiple claims without specifying which procedural bars were applied to which claims. If the state court order is ambiguous, the federal court may proceed to the merits of the claims.").

To dispose of Mr. Carr's claim on procedural grounds, state law required the Appellate Division to determine whether a strategy—that would be objectively reasonable under *Strickland*—could have justified counsel's error.[6] That question is squarely interwoven with a federal question of law.[7] Accordingly, the Appellate Division's unreasonable determination that a post-judgment motion was required because this blunder could have been the result of a reasonable strategy, does not bar federal habeas relief. *Brown*, 451 F.3d at 56-57; *Coleman*, 501 U.S. at 735.

## D. In any event, requiring a post-judgment motion would constitute an exorbitant application of state procedural law, thus barring the State's procedural argument.

A state court's "exorbitant" application of a procedural rule "renders the state ground inadequate to stop consideration of a federal question." *Pierotti v. Walsh*, 834 F.3d 171, 177-79 (2d Cir. 2016); *Fulton v. Graham*, 802 F.3d 257, 262-63 (2d Cir. 2015); *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003); *Lee v. Kemna*, 534 U.S. 362 (2002). This rule prevents a state court from blocking federal review by "egregious[ly]"

---

[6] *See* fn. 1, *above*; *e.g.*, *Turner*, 5 N.Y.3d at 483-85 (as the direct-appellate record confirmed no reasonable strategy for trial counsel's blunder, appellate counsel was ineffective for failing to raise an ineffectiveness claim on direct appeal; "appellate counsel's failure to argue that trial counsel had been ineffective in failing to assert a statute of limitations defense to the manslaughter charge fell short of an objective standard of reasonableness"); *Rivera*, 71 N.Y.2d at 709 (ineffectiveness claim reviewable on direct appeal where "the trial record alone" allows a court to "reject all legitimate explanations for counsel's failure"); *Pabon*, 167 A.D.3d at 460 ("Defendant's ineffective assistance of counsel claims are unreviewable on direct appeal because they involve matters of strategy not reflected in, or fully explained by, the record."); *Shutsha*, 151 A.D.3d at 658 (direct-appellate review available because the unexpanded record confirmed "no reasonable strategic basis" for counsel's blunder); *see also Hinton v. Alabama*, 571 U.S. 263, 264 (2014) (per curiam) (*Strickland* focuses on objective reasonableness); *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003).

[7] This procedural rule is distinct from other rules that are truly independent from federal grounds, such as filing deadlines. *E.g.*, *Coleman*, 501 U.S. 722. To determine whether someone has complied with a filing deadline, no federal constitutional analysis is required.

misapplying a procedural rule and ensures that federal relief does not "depend on a formal 'ritual that would further no perceivable state interest.'" *Lee*, 534 U.S. at 366-67 (quoting *Osborne v. Ohio*, 495 U.S. 103, 124 (1990)); *id.* at 376 (quoting *Davis v. Wechsler,* 263 U.S. 22, 24 (1923) (Holmes, J.) ("Whatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice.")).

 A court evaluates several (non-exhaustive) "guideposts," to measure "the state interest in a procedural rule against the circumstances of a particular case." *Lee*, 534 U.S. at 386-87; *Cotto*, 331 F.3d at 240. These guideposts include: (1) "whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented"; and (2) "whether the alleged procedural violation was actually relied on in the [state] court, and whether perfect compliance with the state rule would have changed the [state] decision." *Clark v. Perez*, 510 F.3d 382, 391 (2d Cir. 2008) (quoting *Cotto,* 331 F.3d at 240).[8]

Here, finding direct-appellate review unavailable would have been exorbitant under these compelling circumstances.

---

[8] The third *Cotto* "guidepost"—whether petitioner "'substantially complied' with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest'"—appears inapplicable to this appellate rule. *See Clark v. Perez*, 510 F.3d 382, 391 n.4 (2d Cir. 2008) (holding that not all of the *Cotto* guideposts are invariably applicable to certain circumstances). Here, Petitioner either did or did not comply with the purported procedural rule, thus "[b]y definition" the question of "substantial compliance" is inapplicable. *Id.*

The first guidepost—"whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented"—weighs heavily in Petitioner's favor. *Cotto*, 331 F.3d at 240. As shown above, New York case law has long required that an ineffectiveness claim be raised on direct appeal if the record demonstrates no reasonable strategic rationale for the blunder. *See* fn. 1, *above*. And here, "The record . . . demonstrates beyond cavil" that this blunder here was the result of grave recklessness, not reasonable strategy. *Brown*, 45 N.Y.2d at 853. Thus, "state caselaw" required that the Appellate Division review this claim on direct appeal. *Cotto*, 331 F.3d at 240.

Second, "perfect compliance with the state rule would [not] have changed the [state] decision." *Clark*, 510 F.3d at 391. Because there is no plausible strategic rationale for this blunder, the record before the Appellate Division, and thus its decision, would have been the same regardless of whether a post-judgment motion was filed. Not only that, but as the Appellate Division decision alternatively rejected the claim on the merits, its decision would have been the same regardless of any procedural finding. A4-5; *Cotto*, 333 F.3d at 242-43.

Finally, and most fundamentally, raising this claim in a post-conviction motion would not serve any conceivable state interest. *Lee*, 534 U.S. at 386-87. The facts underlying this ineffectiveness claim are uncontested and uncontestable. Requiring a post-judgment motion would be "a formal 'ritual that would further no perceivable state interest.'" *Lee*, 534 U.S. at 366-67 (quoting *Osborne*, 495 U.S. at 123).

In sum, an "evaluat[ion] [of] the state interest in [this] procedural rule against the circumstances of [this] particular case," confirms that barring direct appellate review

here was an exorbitant application of settled New York case law. *Lee*, 534 U.S. at 386-87.

*Fulton v. Graham*, 802 F.3d 257, 262-64 (2d Cir. 2015), reinforces the point. There, the Second Circuit held that since there were obvious issues of fact as to whether counsel provided deficient guidance regarding a plea offer, the trial court's holding that the claim had to be raised on direct appeal was "exorbitant." *Id.*

This case presents the flipside of the *Fulton* scenario. Here, as the record conclusively demonstrates there are no material issues of fact, requiring a futile post-conviction motion would be exorbitant.

### E. Alternatively, the remedy here is a stay to permit exhaustion.

If this Court finds a procedural barrier to federal review, the remedy is to stay this petition and hold it in abeyance to allow Petitioner to exhaust[9] this claim in a C.P.L. § 440.10 motion. *Rhines v. Weber*, 544 U.S. 269 (2005) (court has power to stay petition pending state exhaustion); *Rivera v. Kaplan*, 2017 WL 3017713, *2 (S.D.N.Y. July 13, 2017) (Abrams, J.) ("Although the Second Circuit does not appear to have addressed the question of whether such a stay and abeyance procedure is available

---

[9] Although the State styles its procedural theory as one of "procedural default," that is incorrect. STATE MEM. 11-13. Instead, as Petitioner still has remedies available in state court (a post-judgment motion under C.P.L. § 440.10), the State is actually advancing an exhaustion argument under 28 U.S.C. § 2254(b). *E.g.*, *Green v. Keyser*, 2017 WL 5125533, *9-10 (S.D.N.Y. Nov. 1, 2017) ("When a claim for ineffective assistance requires the court to analyze matters outside of the record, New York courts have found that defendants must pursue their claim [through a Section 440.10 motion]. . . . If a defendant fails to file a § 440.10 motion, federal courts find the claim unexhausted for the purpose of habeas review.") (citing *Otero v. Stinson*, 51 F.Supp.2d 415, 419 (S.D.N.Y. 1999)); *Richardson v. Superintendent of Mid-Orange Corr. Facility*, 621 F.3d 196, 201 (2d Cir. 2010); *Johnson v. Lewis*, 929 F.2d 460, 464 (9th Cir. 1991).

when a petition is fully unexhausted, rather than mixed [that is, containing exhausted and unexhausted claims], the circuit courts that have done so—the Third, Seventh, Ninth, and Tenth—have all held that *Rhines* applies to a petition that includes solely unexhausted claims.") (citing *Mena v. Long*, 813 F.3d 907, 910-11 (9th Cir. 2016); *Doe v. Jones*, 762 F.3d 1174, 1179-82 (10th Cir. 2014); *Heleva v. Brooks*, 581 F.3d 187, 191-92 (3d Cir. 2009); *Dolis v. Chambers*, 454 F.3d 721, 725 (7th Cir. 2006)).

To justify a stay, Petitioner must show (1) "good cause" for the non-exhaustion; (2) that his petition is not meritless; and (3) the lack of intentionally dilatory litigation tactics. *E.g.*, *Rivera*, *above*, *2; *see also Tucker v. Kingston*, 538 F.3d 732, 735 (7th Cir. 2008) ("[F]or nearly a decade, we have informed the district courts that whenever good cause is shown and the claims are not plainly meritless, stay and abeyance is the preferred course of action.").

Here, there is ample good cause. As shown above, Petitioner had good cause to conclude that the Appellate Division decision—for three discrete reasons—did not bar federal relief on state-procedural grounds. Petitioner's procedural path (direct appeal followed by a federal habeas petition) was plainly reasonable under these circumstances. *Castellanos v. Kirkpatrick*, 2013 WL 3777126, *2 (E.D.N.Y. July 16, 2013) ("Courts have found good cause where the wording of a state court decision caused a petitioner 'reasonable confusion about his claims and their viability[.]'") (quoting *Henry v. Lee*, 2013 WL 1909415,*7 (E.D.N.Y. May 8, 2013)); *Whitley v. Ercole*, 509 F.Supp.2d 410, 419 (S.D.N.Y. 2007) ("[A] petitioner's showing of his

confusion, if reasonable, concerning the delay in his state filing would satisfy the *Rhines* requirement of 'good cause.'").

Second, as shown in Petitioner's opening petition and below, this petition has substantial merit. *Rivera*, *above*, *2.

Third, Petitioner has not engaged in any dilatory tactics. *Id.*

Accordingly, if this Court ratifies the State's procedural argument, it should stay this petition and hold it in abeyance pending further state proceedings under C.P.L. § 440.10.

## REPLY POINT II

### The State's prejudice analysis suffers from serious legal and factual problems.

The State attempts to show that counsel's egregious and pervasive redaction blunder—which allowed the jury to read a judge's damning declaration that Mr. Carr had "already killed somebody and shot two other people"—did not undermine confidence in the trial's outcome. PET. MEM. 29-41 (citing *Strickland v. Washington*, 466 U.S. 668, 693-96 (1984)). In its attempt to show that this highly-prejudicial blunder did not undermine confidence in the verdict, the State advances a prejudice theory that's wrong on the law and unreasonably interprets the facts.

#### A. The gunshot-residue testing confirms innocence.

The State answers the critical fact that tape lifts on Mr. Carr's sweater indicated no gunshot residue (PET. MEM. 35-36) with the claim that because "the gun was never recovered, the likelihood that its shooter would have gunshot residue on his clothing could not be ascertained with any reasonable degree of certainty." STATE 22-23. This

makes no sense. The uncovery of a gun has nothing to do with the ability to accurately test clothing for gunshot residue. Uncovered gun or not, the results of the residue testing are the same.

The State invokes an NYPD detective's claim that on some "occasions" in the preceding four years, she had tested "defendant's clothing or shooter's clothing" for gunshot residue and had not found gunshot residue. A804, A814; STATE'S MEM. 22-23. But the detective never explained how many "occasions" she was referencing, let alone whether the negative results on those "occasions" were actually false negatives. A804, A814. Thus, this testimony has virtually no probative value, especially given the detective's other incredible explanations for a purported no-chemical-testing policy. PET. MEM. 35-36; *compare* SCOTT-ROWE: A801 (incomprehensibly claiming the NYPD does not test for gunshot-residue chemicals because gunshot residue contains "nitrites," which could be mistaken for non-gunshot-residue materials, such as cured meat), *with* SCOTT-ROWE: A811-12 (conceding that gunshot residue contains elements that are not collectively found in common substances); STATE'S MEM. 22-23 (failing to address this inconsistent testimony).

## B. The prosecution's evidence, which rested on cooperators, was underwhelming.

As for the drug-dealing cooperators (a mother, her son, and her nephew), the State claims their testimony regarding facts having no bearing on identity (e.g., bullet location and the weapon type) was corroborated by other evidence. STATE MEM. 19. But the question before the jury was not whether the cooperators were accurately describing the *crime* they observed, but whether they truthfully accused *Mr. Carr* of

13

that crime. An eyewitness' knowledge of details about the crime (that don't bear on identity) does not confirm the accuracy of their testimony regarding identity.[10]

The State also misses the mark when it claims that the only prison exposure that matters, as far as a cooperator's credibility goes, is the time faced if the cooperation deal falls through (not the time faced before entering into the agreement in the first place). STATE MEM. 23-24. There is no reason why the jury would embrace this illogical view of a cooperator's motive to lie. Drastic sentencing exposure provides a compelling motive for an individual to seek a beneficial cooperation agreement by accusing someone of a serious crime.[11] Here, for instance, the cooperators were charged with serious felonies, knew Mr. Carr had been arrested for the shooting, and thus knew they could reduce their drastic exposure if they accused him of the murder. And once they accused Mr. Carr, it was unlikely they would renege and risk drawing the ire and suspicion of police/prosecutors, especially when facing serious charges of their own.

Alternatively, the "jury could have"[12] easily concluded that the drastic sentencing difference, under the agreements, between non-cooperation and cooperation, was

---

[10] It is unclear why it matters that "none" of the cooperators "concocted a motive for" Mr. Carr to engage in the shooting. STATE MEM. 20-21. A cooperator does not have to "concoct a motive" in order to falsely accuse an already-charged individual in exchange for the nullification of serious prison time.

[11] The State does not deny that Natalie Santiago's son's cooperation agreement (Rivas Jr.) required Natalie to cooperate in order for her son to avoid prison time. Nor does the State deny that this daunting reality could easily induce a mother to lie to save her son. PET. MEM. 36-37.

[12] *Eze v. Senkowski*, 321 F.3d 110, 133 (2d Cir. 2003).

more than enough to motivate these drug dealers to falsely testify against Mr. Carr.[13] But the judge's damning declaration of guilt, delivered to the jury during deliberations, rendered these powerful motive-to-lie points academic. PET. MEM. 33.

### C. The State's reliance on anonymous "minivan" hearsay fails.

The State also relies on conclusory and anonymous hearsay that has virtually no probative value. STATE MEM. 21 (relying on an anonymous minivan driver's hearsay statement that "that's him with the black hoody running. He was shooting over there").

For starters, the jury could very well have rejected this anonymous hearsay out of hand given that it came from an anonymous source who never testified.

Furthermore, there is no evidence this anonymous declarant saw the shooting, let alone the shooter's features/face. While the State speculates that this anonymous person was in the van parked near the scene (STATE MEM. 21 & n. 10; State's Ex. 66 [depicting a van that drove off 40 seconds after the shooting]), we can only guess whether she *saw* the shooter, let alone saw a recognizable face.[14] Not only that, but as the State recognized in the Appellate Division, no one brought the minivan in the

---

[13] ORTIZ COOPERATION TRANSCRIPT: A8-9 (if Ortiz cooperated he would receive a misdemeanor and no jail time, if not, he would receive a felony conviction and up to nine years in prison); ORTIZ: A645; RIVAS JR. COOPERATION TRANSCRIPT: A44-46 (if Rivas Jr. testified against Mr. Carr, he would receive no jail time instead of a recommended sentence of five years and a potential combined sentence of more than 20 years for a C-violent felony conviction and two B-felony-narcotics charges); RIVAS JR.: A724; RIVAS COOPERATION TRANSCRIPT: A44-46 (expressly tying Rivas Jr.'s receipt of a conditional discharge to his mother's cooperation); *see* Pet. Mem. 12-14.

[14] *See* STATE'S APP. DIV. BRIEF: A1118 (conceding as much by noting that the person outside the minivan depicted on the footage was merely "in a position to have *heard* the shots" and was "in a position to have an unobstructed view of the shooter's *back*") (emphasis added).

surveillance video to the jury's attention (A1118), so it is unlikely the jury connected these dots on its own.

Even assuming the anonymous person saw the shooter, it is likely that her "that's him with the black hoodie" statement was merely conveying that she saw someone who matched the shooter's generic description (that is, a man in a hoodie). There is no evidence she carefully watched the hooded shooter, tracked him for the 40 seconds following the shooting, drove off while continuing to monitor him, and then, when speaking to the police, pointed to very man she had been tracking. The opposite is more likely: this anonymous person was scared of gunshots and frantically fled without tracking the shooter's movements with detective-like precision. So, for all the jury knew, this anonymous declarant was pointing out one of the many people wearing a hoodie that November evening, not pointing out the actual shooter. PET. MEM. 40 N.17; STATE'S MEM. 26. Again, we can only guess about these deficiencies because the anonymous declarant never took the stand.

Finally, even if this anonymous declarant was actually declaring a specific identification of the the running hooded man as the shooter she saw earlier, the jury could have easily concluded that this man was not Mr. Carr, whom the police arrested later at a different location (the schoolyard exit). PET. MEM. 10-11. Again, it was 8:30 p.m. in November, so there could have been dozens of individuals in hoodies running after hearing gunshots. The jury heard no reliable evidence that the person the anonymous individual was pointing at was Mr. Carr and not another man running that night with a hoodie on.

In sum, the State's reliance on the anonymous declarant's vague claim is weak and speculative.

### D. The State cannot rely on purported "evidence" that the jury never heard.

The State's unprecedented suggestion that *Strickland* prejudice analysis does not exclusively focus on the evidence *before the jury* is baseless. STATE MEM. 24-25 (arguing, without citation to anything, that when a defendant cites weaknesses in the State's case in a habeas petition, the State can respond with evidence it never presented to the jury). The *Strickland* prejudice inquiry (as with all questions of prejudice/harmless error) focuses on the impact counsel's blunder had on the jury given "the evidence *before* the judge or jury." *E.g.*, *Strickland*, 466 U.S. at 693-96. The State's purported possession of extra-trial-record evidence is irrelevant to the prejudice analysis before this Court. *Id.*[15]

---

[15] The State's unprecedented reliance on purported "evidence" the jury never heard, and its baseless "motion to strike" our prejudice argument regarding the absence of motive evidence, not only violates *Strickland*, 466 U.S. at 693-96, but it fails on its own terms. The State claims it can rely on unadmitted evidence proving a "motive" because defense counsel never made a "no-motive" argument at trial. Had he done so, the theory seems to go, the State would have responded with co-defendant's allegations (the State never clarifies how precisely it would have presented such allegations to the jury). STATE MEM. 24-25.

But our no-motive argument is not some kind of "post-conviction" surprise. STATE MEM. 24. The court charged the jury, without objection from the State, that it could "consider" "lack of motive" in assessing identity (A945-46), thus confirming that this issue was squarely before the jury. So, while a Petitioner arguing prejudice is certainly permitted to cite deficiencies in the State's case that trial counsel did not rely upon, the deficiency here—no motive evidence—was specifically before the jury.

Furthermore, it strains credulity to suggest that the State did not rely on a co-defendant theory at trial because Mr. Carr did not make a no-motive argument. STATE MEM. 25. On the contrary, the State never presented any evidence regarding the co-defendant because, after securing his guilty plea to manslaughter, the State opted to abandon an accomplice theory at Petitioner's trial. CURBELO DECL. ¶ 6 n.1 (the State obtained a guilty plea from the indicted co-defendant in 2010).

The State also mentions that the "jury was fully aware" of its witnesses' credibility problems, apparently suggesting this "awareness" cuts in its favor. STATE MEM. 24. On the contrary, the jury's awareness of the serious credibility problems with the State's witnesses *confirms* prejudice. *Strickland*, 466 U.S. at 696 ("Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."). As the jury knew the problems with the State's case, there is a reasonable probability it was ready to acquit until it read a judge's declaration that Mr. Carr was guilty of the charged offenses. A23-24, A48-49. The State seems to ignore that weaknesses in its case confirm prejudice, they don't disprove it. *Strickland*, 466 U.S. at 696.[16]

## CONCLUSION

This Court should issue a writ of habeas corpus. At a minimum, this Court should stay this petition and hold it in abeyance.

Respectfully submitted,

Robert S. Dean (RD-0772)
Attorney for Petitioner
Center for Appellate Litigation
120 Wall Street, 28th Floor
New York, New York 10005
(212) 577-2523, ext. 502
rdean@cfal.org

BY: /s/ Matthew Bova
Matthew Bova (5073135)
*Of Counsel*
mbova@cfal.org
May 7, 2021

---

[16] Nor does it matter whether motive is an "element." STATE MEM. 24. The lack of motive evidence undermines the State's identity theory, thus favoring a prejudice finding. *Strickland*, 466 U.S. at 693-96; JURY INSTRUCTION: A945-46.